MARY DAUBACH, Plaintiff-Appellant, *v.* KAZUO ISHIHARA, Defendant-Appellee.

First District (2nd Division)    No. 80-3229

Opinion filed December 29, 1981.—Rehearing denied February 5, 1982.

James Lee Daubach, of Chicago, for appellant.

Epton, Mullin, Segal & Druth, Ltd., of Chicago (Gerald B. Mullin and Mary F. Stafford, of counsel), for appellee.

JUSTICE PERLIN delivered the opinion of the court:

Pursuant to the Illinois Paternity Act (Ill. Rev. Stat. 1977, ch. 40, par. 1351 *et seq.*), plaintiff, Mary Daubach, filed suit against defendant, Kazuo Ishihara, alleging that defendant had fathered a child born out of wedlock to plaintiff. Plaintiff sought child support and reimbursement for the reasonable expenses she incurred during her pregnancy, confinement and recovery. Based on the results of blood tests received into evidence, the trial court entered summary judgment for defendant. Plaintiff appeals, contending that the court erred in admitting the tests into evidence; that the tests, if admissible, did not support summary judgment; and that the court erred in denying plaintiff's motion to compel the taking of defendant's deposition. For the reasons which follow, we reverse the judgment of the trial court and remand for further proceedings not inconsistent with this opinion.

Plaintiff's action, instituted on November 11, 1979, alleged that defendant was the father of a child born to plaintiff on June 28, 1978. The complaint asserted that plaintiff and defendant had lived together for 4½ years from 1975 to 1979. Plaintiff claimed that during this period she did not visit, socialize or associate with any man other than defendant. In his answer defendant denied this allegation.

The child was conceived some time between September and November of 1977. Plaintiff stated that during this same period she had intercourse with defendant approximately 16 times. Defendant denied being the father of the child.

Prior to the commencement of this action, blood tests of the plaintiff, defendant and child were taken by Dr. Chang Ling Lee of Mount Sinai Hospital. Dr. Lee concluded that the tests excluded defendant from paternity of the child. Based on the results of these tests, defendant moved for summary judgment after plaintiff brought suit.

Upon agreement of the parties, the court ordered plaintiff, defendant and child to submit to a second set of blood tests to be conducted by a physician selected by plaintiff. The parties stipulated that "in the event

exclusion [of defendant] is established by any blood test, the results thereof establishing such exclusion shall be admitted in evidence in this cause." Based on the second set of blood tests, Dr. Takashi Okuno, Medical Director of the Blood Bank, Lutheran General Hospital, concluded that "the paternity of [defendant] *appears to be excluded* * * *." (Emphasis added.) The court granted defendant leave to file these test results.

Plaintiff filed a motion to compel defendant to appear for a deposition. The court denied plaintiff's motion and at the same time granted plaintiff 21 days to respond to defendant's motion for summary judgment. Plaintiff filed her own affidavit and that of Dr. Okuno in opposition to the motion for summary judgment.

The affidavit of Dr. Okuno, prepared by plaintiff's attorney, stated in part:

> "That the results of his [Dr. Okuno's] tests and those of Dr. Lee are inconclusive because they fail to exclude the following gene variant possibilities in Kazuo Ishihara:
> A) E gene variants such as $E^w$, $E^u$, or $E^t$
> B) S gene variants such as $S^u$, or $S_2$
> C) Fy gene variants such as $F_y$ or $Fy^x$.
> Because of Mr. Ishihara's racial background (Japanese), many more gene variants than cited in paragraphs A), B), and C) also can be assumed to exist, making test results even less conclusive.
> That without the exclusion of those gene variants it is not possible to form an opinion based on a reasonable degree of medical certainty as to whether or not Kazuo Ishihara is the father of Allison Marie Ishihara."

The court granted defendant leave to take the deposition of Dr. Okuno. In his deposition Dr. Okuno stated that, based solely on the test that he did and the ability to test for additional gene variants, "apparently exclusion of paternity exists." Dr. Okuno stated further that, with excluding the possible gene variants E, S, and Fy, he could not conclude with certainty that the defendant was excluded as the biological father of the child born to plaintiff. The E, S and Fy gene variants were not tested because the reagents necessary for such tests are not available.

Plaintiff moved to exclude all evidence of the blood tests. Defendant moved to strike plaintiff's motion and again moved for summary judgment. The trial court granted defendant's motion to strike plaintiff's motion to exclude the evidence of the blood tests on the basis that the "findings of the two respective doctors are not inconsistent but are substantially in agreement. That is with the results themselves and what was tested, and their results seem to be in agreement with each other." The trial court then granted summary judgment in favor of defendant.

# I

The first issue presented for review is whether the trial court properly admitted into evidence the results of the blood tests.

Section 1 of the Act on Blood Tests to Determine Paternity (Ill. Rev. Stat. 1977, ch. 40, par. 1401) states, in part, that "[t]he results of the [blood] tests shall be receivable in evidence only if definite exclusion is established." Dr. Lee concluded that defendant was excluded from paternity. Upon agreement of the parties, the court ordered plaintiff, defendant and the child to submit to a second set of blood tests to be conducted by a physician chosen by plaintiff. Plaintiff and defendant stipulated that "in the event exclusion is established by any blood test, the results thereof establishing such exclusion shall be admitted in evidence in this cause." Section 4 of the Act on Blood Tests provides, in pertinent part, that "[i]f the experts disagree in their findings, such findings shall not be admissible, and the question of paternity shall be submitted upon all the evidence." Ill. Rev. Stat. 1977, ch. 40, par. 1404.

■■ It does not appear from the pleadings, affidavits and deposition included in the record that the conclusions of Dr. Lee and Dr. Okuno are in disagreement. In interpreting the blood tests performed by him, Dr. Lee states that "the father of the child * * * must have the genetic markers "S", "e", and "Fy$^b$". Since [defendant] lacks these markers, he is, therefore, *excluded* from the paternity of the child * * *."

Dr. Okuno's report states in part:

"[T]he paternity of [defendant] *appears to be excluded* on the basis of:

a) his apparent homozygous genes of E, s̄, and Fy$^a$ blood typings, and

b) the lack of E, s̄ and Fy$^a$ blood typings in the child * * *."
(Emphasis added.)

The child has the genetic markers "S", "e" and "Fy$^b$" which markers the defendant lacks. Tests performed by both doctors resulted in identical findings with respect to these markers. Dr. Okuno stated that because certain gene variants were not excluded, he could not conclude with absolute certainty that defendant was excluded from paternity. Dr. Okuno explained in his deposition, however, that the reason these certain gene variants were not tested was that the reagents necessary for such tests are not currently available. Dr. Okuno stated further that, based on the testing that may be done on these gene variants, he could never conclude with absolute certainty that defendant was excluded from paternity.

When asked if he could ever conclusively exclude someone from paternity, Dr. Okuno stated that when a child has a gene which neither parent possesses, paternity is excluded by "primary exclusion." "Second-

ary exclusion" is established by testing for homozygosity and heterozygosity.[1] In the case at bar, since plaintiff and the child have identical antigens, testing cannot be done by the primary exclusion method. Thus, the technique of secondary exclusion was utilized.

In an article entitled *Current Status of Paternity Testing*, 9 Fam. L. Q. 615, 622 (1975), Dr. Lee stated that:

> "* * * exclusions which are based on the inference of homozygous genetypes determined by a negative reaction in a particular test are known as Indirect Exclusions, and should be accepted with caution. *The particular test should be repeated with the same and different reagents or by a different technologist or in a different laboratory.*" (Emphasis added.)

In the case at bar the blood tests were first conducted by Dr. Lee and then repeated by Dr. Okuno. The tests were repeated with the same reagents by two different technicians and in different laboratories. Dr. Okuno states, however, that although his interpretations of the test findings differ from that of Dr. Lee, the "findings are identical."

The trial court determined that the findings of Dr. Lee and Dr. Okuno were not in disagreement with respect to defendant's exclusion from paternity. The trial judge stated:

> "He's [Dr. Okuno] not really giving a contrary opinion. He's not as certain as Dr. Lee perhaps but he's still saying that at least what I read he is saying, is that under no circumstances would he 100% exclude anyone unless he went through a miriad [sic] of testing other things and that to me based on what I have is sufficient under the law and the statute to exclude the defendant in this case from being the father of the child. For that reason the motion for summary judgment is sustained."

There appears to be ample foundation for concluding that the results of the tests performed by Dr. Lee and Dr. Okuno are not in disagreement. Therefore, under the provisions of the Paternity Act and the stipulation of the parties, the trial court did not err in admitting the results of the blood tests into evidence.

## II

The second and, in our opinion, dispositive issue presented by plaintiff's appeal is whether summary judgment may be granted in a paternity action solely on the basis of the results of blood tests.

---

[1] "Homozygosity" is defined as "the state of having identical genes at one or more paired loci in homologous chromosomes." "Heterozygosity" is defined as "the state of having different allelic genes at one or more paired loci in homologous chromosomes." "Homologous" means "identical with respect to their genetic loci." "Allelic" means "relating to one or more of a series of genes that may occupy the same position or locus on a specific chromosome." Steadman's Medical Dictionary Illustrated (23d ed. 1976).

Section 4 of the Act on Blood Tests to Determine Paternity provides that "[i]f the court finds, as disclosed by the evidence based upon the [blood] tests, that the alleged father is not the father of the child, the question of paternity shall be resolved accordingly." (Ill. Rev. Stat. 1977, ch. 40, par. 1404.) Under section 2 of the Act "[t]he experts [who conduct the blood tests] shall be called by the court as witnesses to testify to their findings of exclusion and shall be subject to cross-examination by the parties." (Ill. Rev. Stat. 1977, ch. 40, par. 1402.)[2] In *People ex rel. Yarn v. Yarn* (1979), 73 Ill. App. 3d 454, 457, 392 N.E.2d 606, the court stated:

"Section 2 of the blood test act provides, in mandatory terms, that the experts who conducted the tests shall be called by the court as witnesses and shall be subject to cross-examination by the parties. The plain language of the act mandates the right of the parties to be able to cross-examine the experts as to whether the tests were conducted and interpreted properly. Any other interpretation of section 2 would result in the disposition of many such suits without affording the parties the right of confrontation."

Similarly, in *People ex rel. De Vos v. Laurin* (1979), 73 Ill. App. 3d 219, 223, 391 N.E.2d 164, the court held that "the exclusionary report in itself should not be used to deprive plaintiff of a trial to present its own testimony and to attack the credibility of the test. This is particularly so in the instant case, where [as in the case at bar] the conclusion of Dr. Lee was based on 'our * * * current understanding of inheritance.' "

Based on the foregoing authorities, we conclude that the trial court erred in granting summary judgment for defendant. This conclusion makes it unnecessary to reach plaintiff's third issue, *i.e.*, that the trial court erred in denying plaintiff's motion to compel the taking of defendant's deposition.

For the reasons stated herein, we reverse the trial court's entry of summary judgment in defendant's favor and remand the cause to the trial court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

HARTMAN, P. J., and STAMOS, J., concur.

---

[2] Effective January 1, 1981, this part of section 2 was amended and now reads that "[t]he experts *may* be called by the court as witnesses to testify to their findings and shall be subject to cross-examination by the parties." (Emphasis added.) Since section 1 has been amended to allow introduction of evidence of *inclusion*, section 2 no longer limits the witnesses' testimony to findings "of exclusion."