THE DEPARTMENT OF PUBLIC AID *ex rel.* VICKI GALBRAITH, Petitioner-Appellee, v. JEFF JONES, Respondent-Appellant.

Fourth District   No. 4—95—0605

Opinion filed June 7, 1996.

Anthony B. Cameron, of Quincy, for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Claudia E. Sainsot, Assistant Attorney General, of counsel), for appellee.

JUSTICE GREEN delivered the opinion of the court:

On behalf of Vicki Galbraith, the Illinois Department of Public Aid (Department) filed a petition pursuant to the Illinois Parentage Act of 1984 (Act) (750 ILCS 45/1 *et seq.* (West 1992)) against respondent Jeff Jones seeking to establish that respondent was the father of Galbraith's son, K.G. (born February 3, 1993), and an order directing respondent to pay child support. On April 6, 1995, the circuit court of Adams County granted the Department's motion for summary judgment finding respondent was the father of K.G. Subsequently, the court ordered respondent to pay past and future child support. Respondent appeals, contending that summary judgment was improper based on blood test results alone when he presented facts in his affidavit which raised a genuine issue of paternity. We affirm.

The record indicates that respondent denied paternity and the court ordered Galbraith, K.G., and respondent to submit to deoxyribonucleic acid (DNA) tests to determine inherited characteristics, including Human Leukocyte Antigen (HLA) tests, as authorized by section 11 of the Act (750 ILCS 45/11 (West 1992)). Subsequently, the

Department filed a motion for summary judgment against respondent seeking to establish him as the father of K.G. Attached to the motion were the results of the ordered blood tests, which revealed a combined paternity index of 611 to 1 and a probability of paternity of 99.84%. Also attached to the motion was the affidavit of Galbraith, which stated (1) she was the mother of K.G.; (2) she became pregnant with K.G. between May 9 and May 18, 1992; and (3) from April 27, 1992, and June 2, 1992, she had sexual relations only with respondent.

Respondent filed a motion in opposition to the Department's motion for summary judgment. Respondent attached his affidavit, which stated (1) although at some time he had sexual relations with Galbraith, he had not had any sexual contact with her for the two years preceding the birth of K.G.; (2) he was acquainted with Linus Mark Trokey who, on several occasions in the early summer of 1992, told him he was having ongoing sexual relations with Galbraith; (3) in late June or early July 1992, Galbraith informed him she was pregnant and sought to borrow funds for an abortion; (4) Galbraith told him that the father of the child was either Trokey or another named individual other than respondent whose name he could not remember; and (5) it was biologically impossible for him to be the father of K.G.

Also attached to respondent's motion in opposition to summary judgment was a copy of a set of interrogatories answered by Galbraith where she indicated (1) she told respondent of her pregnancy with K.G. and both of them agreed that an abortion was the best solution; (2) respondent agreed to contribute some money to the payment of the abortion; and (3) she had sexual relations with Trokey on three or four occasions between June 7, 1992, and July 1, 1992, at which time she was already pregnant with K.G.

During the pendency of the case, respondent was granted several continuances in an effort to locate Trokey. Apparently, Trokey has never been found. Subsequently, following a hearing, the circuit court entered a summary judgment of paternity finding respondent to be the father of K.G.

A motion for summary judgment should only be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1992); see also *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871 (1986). Essentially, respondent contends that the court erred in entering summary judgment against him when he raised a genuine issue of his paternity by

alleging that (1) he had not had sexual relations with Galbraith for two years preceding the birth of K.G.; (2) Galbraith admitted to him that either Trokey or another man, other than respondent, was the father of K.G.; and (3) Galbraith admitted she had sexual relations with Trokey near the time of conception.

█ Section 11(f) of the Act discusses the effect of the blood tests ordered to determine inherited characteristics, and provides, among other things, that if the blood tests result in a combined paternity index of 500 to 1 or greater, the putative father is presumed to be the father. 750 ILCS 45/11(f)(4) (West 1992). Here, the combined paternity index was 611 to 1; thus, there is a rebuttable presumption that respondent is the father of K.G. This presumption is rebuttable by clear and convincing evidence. *People ex rel. Stockwill v. Keller,* 251 Ill. App. 3d 796, 800, 623 N.E.2d 816, 819 (1993). The issues here are whether respondent's rebuttal evidence, set forth in his affidavit and interrogatories answered by Galbraith, was clear and convincing, and whether the Department's evidence of paternity " 'so overwhelmingly outweigh[s] the respondent's evidence in rebuttal of the proposition that he fathered the child that paternity was not a genuine issue.' " *Stockwill,* 251 Ill. App. 3d at 798-99, 623 N.E.2d at 818, quoting *In re Paternity of Smith,* 179 Ill. App. 3d 473, 476, 534 N.E.2d 669, 671 (1989).

Respondent refers to several decisions where blood tests alone were deemed insufficient evidence of paternity to support summary judgment against the putative father in light of contravailing evidence refuting paternity. None of these cases, however, involved the existence of a presumption of paternity based on a combined paternity index of 500 to 1 or more, as here.

For instance, in *Smith* (179 Ill. App. 3d 473, 534 N.E.2d 669), the appellate court reversed and remanded a summary judgment of paternity against the respondent father where blood tests results indicated a 99.99% chance that the respondent was the father. However, the blood test used there showed exclusion only and could not affirmatively establish paternity. The court determined that a genuine issue of paternity remained, even in light of the blood tests, when there was evidence that the mother accused another man, other than the respondent, of being the father, another man's name was put on the birth certificate and given to the Department as the name of the father, and the mother admitted she had sexual relations with three men, other than respondent, during the year the child was conceived.

In *In re Estate of Lukas,* 155 Ill. App. 3d 512, 508 N.E.2d 368 (1987), the appellate court upheld the circuit court's denial to amend

an order of heirship to include the name of petitioner's son as an heir of the deceased. In order to determine paternity, genetic blood testing, including HLA tests, were done on the child, the deceased's parents, the mother and her parents. No samples could be taken from the deceased. The expert evidence concerning the paternity probability was contradictory, ranging from an 89% probability to 98.9% probability. There was also contradictory evidence as to whether petitioner had an exclusive relationship with the deceased during the probable time of conception. Based on the contradictory evidence, the *Lukas* court held that petitioner failed to prove paternity by clear and convincing evidence. In so holding, the court noted that blood tests, including HLA tests, were not conclusive evidence of paternity, and parties of a paternity action were entitled to challenge the accuracy of the test results at trial.

In *Daubach v. Ishihara*, 103 Ill. App. 3d 750, 431 N.E.2d 1183 (1981), the appellate court reversed and remanded a summary judgment of paternity entered against a putative father when the sole evidence was the results of blood tests. There, unlike the instant case, the blood tests used could only provide primary exclusion evidence. Moreover, the then section 2 of the Act on Blood Tests to Determine Paternity (Ill. Rev. Stat. 1977, ch. 40, par. 1402) required experts who conducted the tests to testify about the results and be subjected to cross-examination. Presently, section 11(c) of the Act requires that the expert prepare a written report on the test results and that the court "may" require the expert to testify as to the results. 750 ILCS 45/11(c) (West 1992).

■ Furthermore, presently section 11(b) of the Act allows an interested party to challenge the court-appointed expert's qualifications and testing procedure prior to the blood tests (750 ILCS 45/11(b) (West 1992)). Section 11(c) of the Act allows either party to demand additional independent tests which may be admitted into evidence. 750 ILCS 45/11(c) (West 1992). Section 11(e) of the Act allows a party to file a motion within 28 days of the receipt of the test results challenging the admissibility of the results. 750 ILCS 45/11(e) (West 1992). Under the above-mentioned provisions of the Act, respondent had an opportunity to challenge the accuracy of the blood test results prior to trial and present this evidence to support his position that summary judgment was improper. Respondent has failed to offer any evidence that would raise a genuine issue of fact as to the accuracy of the blood test results.

Moreover, this court in *Stockwill* distinguished cases where only exclusionary blood tests were used to determine paternity, such as in *Smith* and *Daubach*, from cases, as here, where the use of modern

blood tests provided affirmative evidence on the probability of paternity. In *Stockwill*, this court upheld a summary judgment of paternity where blood tests indicated respondent's probability of paternity was 99.84% with a combined paternity index of 625 to 1. *Stockwill*, 251 Ill. App. 3d at 797. The respondent generally denied paternity but also gave some inconsistent statements regarding whether he had sexual relations with the child's mother during the probable time of conception. The respondent averred that he was sterile without providing any evidence. This court reasoned that a presumption of paternity existed due to a combined paternity index of 625 to 1 (Ill. Rev. Stat. 1991, ch. 40, par. 2511(f)(4) (West 1992)), but that the respondent failed to present any rebuttal evidence that was more than speculation, let alone clear and convincing.

■ Here, respondent did present some rebuttal evidence generally denying paternity and indicating that Galbraith admitted having sexual relations with another man soon after the time of conception. Respondent's affidavit also indicated that Galbraith told him the father of the child was a man other than himself. We do not deem this evidence to constitute the clear and convincing evidence necessary to rebut the presumption of paternity.

Galbraith's affidavit states she had sexual relations exclusively with respondent from April 27, 1992, and June 2, 1992, and that the date of conception was between May 9, 1992, and May 18, 1992. Galbraith did not deny having sexual relations with Trokey, but she claimed those occasions happened soon after she was pregnant, between June 7, 1992, through July 1, 1992. Respondent does not deny that the date of probable conception given by Galbraith is correct nor does he deny the accuracy of the time of commencement of the relationship between Trokey and Galbraith. Respondent has presented no evidence to indicate that the time of conception could have been during the time Galbraith was seeing Trokey. Apparently, respondent was given several continuances to attempt to locate Trokey but was unable to do so. Without some evidence to support his claim that Trokey could be the father of the child, respondent has failed to rebut the presumption of paternity. Given that presumption based on the results of the blood tests together with Galbraith's affidavit indicating that respondent was the only man with whom she had sexual relations during the undisputed time of conception, paternity was not a genuine issue and summary judgment was proper. For the reasons stated, we affirm.

Affirmed.

GARMAN and KNECHT, JJ., concur.